UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-mj-03288-Louis

UNITED STATES OF AMERICA

vs.

DANIEL GEORGE VERNON,
TODD POINT-DU-JOUR
    Defendants.
_____/

## CRIMINAL COVER SHEET

1. This matter did not originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle).

2. This matter did not originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard).

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
SCOTT R. STRAUSS
ASSISTANT UNITED STATES ATTORNEY
Court No. 74425
99 N. E. 4th Street
Miami, Florida  33132-2111
TEL (305) 961-9127
FAX (305) 530-7976

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Daniel George Vernon<br>Todd Jean Point-Du-Jour<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 19-mj-03288-Louis<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 10, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1029 (a)(3) | Fraud and related activity in connection with identification documents, authentication features and information |
| 18 U.S.C. 1028A | Aggravated identity theft |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

JAMES CUTBIRTH SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug 12 2019

City and state: Florida, Miami

_____
*Judge's signature*

Lauren Louis
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, James Cutbirth, Special Agent, United States Secret Service (USSS), being sworn to tell the truth, state the following:

1. Since October 2016, I have been employed as a Special Agent with the USSS. I have been trained to conduct criminal investigations involving or relating to the financial infrastructure of the United States, including identity theft, counterfeit United States currency, wire fraud and access device fraud. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA. I am currently assigned to the South Florida Organized Fraud Task Force of the Miami Field Office, within the USSS.

2. The facts set forth in this affidavit are based on my personal knowledge as well as documents provided to me in my official capacity, information obtained from other individuals, including officers from the Customs and Border Protection (CBP), and Special Agents from the Homeland Security Investigations (HSI); my review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. The information contained in this affidavit is true and correct, to the best of my knowledge and belief. Because this affidavit is solely for the purpose of establishing probable cause, it does not contain all of the information known about this investigation.

3. I respectfully submit that there is probable cause to believe that **Daniel George Vernon** and **Todd Jean Point-Du-Jour** did knowingly, and with intent to defraud, possess fifteen (15) or more counterfeit or unauthorized access devices, that is, credit card/debit card account numbers and social security numbers issued to other persons, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029 (a)(3); and during and in relation to this felony violation, did knowingly possess and use, without lawful authority, a means of identification of

1

another person, that is, credit card/debit card account numbers and social security numbers, in violation of 18 U.S.C. §§ 1028A and 2.

4. On or about August 10, 2019, at approximately 6:30 a.m., CBP boarding officers and a CBP K9 officer boarded the Royal Caribbean Symphony of the Seas cruise ship arriving from Coco Cay, Bahamas. CBP selected cabin number 7708 for a routine customs border search due to the late booking of the reservation. Inside cabin 7708, CBP officers encountered **Vernon** and **Point-Du-Jour** inside the cabin, who each gave consent to search their cabin and their luggage. When asked by CBP officers, **Vernon** stated that he had approximately $9,999 dollars inside his luggage in addition to valuable watches, which **Vernon** stated he purchased on the cruise. Both **Vernon** and **Point-Du-Jour** identified their belongings inside the cabin and walked into the hallway as the officers searched their cabin. During the search, a K9, trained to detect narcotics, alerted to a safe inside **Vernon**'s and **Point-Du-Jour's** cabin. A subsequent search of the safe revealed a small container of marijuana, which **Point-Du-Jour** said belonged to him. During the cabin search, officers also noticed a considerable amount of jewelry. The officers then conducted a brief field interview with **Vernon**, who appeared very nervous and visibly shaking while answering routine questions.

5. **Vernon** and **Point-Du-Jour** were escorted off the vessel by CBP officers to the CBP baggage control secondary. At approximately 7:00 a.m., CBP officers searched **Vernon's** and **Point-du-Jour's** baggage. **Vernon** identified his luggage and his two cell phones: one iPhone and one Samsung. During a search of **Vernon's** baggage, CBP officers discovered $9952.70 in U.S. currency and a U.S. Passport, in addition to expensive jewelry, including two luxury watches, one ring, one bracelet, two pairs of earrings, and various credit cards.

2

6. CBP officers also searched **Point-Du-Jour's** luggage. **Point-Du-Jour** identified his luggage and his two iPhones. Inside **Point-Du-Jour's** luggage, CBP officers discovered $1522.42 in U.S. currency and a U.S. Passport, in addition to expensive jewelry, including five watches, one ring, one pair of earrings, and various credit cards.

7. During **Vernon's** baggage exam, he continued to appear very nervous and provided contradictory statements. For example, **Vernon** claimed to work for a construction company, which, **Vernon** stated, gave him a credit card to spend money on the cruise. Later, however, **Vernon**, stated that he gambles to make money, and his friend, who is a travel agent, booked the cruise for him. Based on his answers, his nervous behavior, and the discovery of marijuana, CBP performed a basic electronic media border search on **Vernon's** and **Point-Du-Jour's** four cell phones, who each provided the respective passcodes for their cell phones.

8. A search of the cell phones revealed what appeared to be credit card/debit card numbers, and personal identifiable information (PII) including social security numbers and addresses for numerous subjects unrelated to **Vernon** and **Point-Du-Jour**. Specifically, on **Vernon's** phone, CBP found various names, dates of births, social security numbers, credit/debit card numbers, and other PII to unrelated individuals. Although **Vernon's** iPhone remotely disabled during the search, CBP captured photographs of some of the PII on **Vernon's** iPhone, which included 25 bank account numbers and social security numbers belonging to unrelated individuals. In addition to the screen captures, law enforcement saw a large amount of PII on the iPhone before it was disabled. Finally, law enforcement also saw on his iPhone that **Vernon** had a picture in his recently deleted box of an e-mail from Royal Caribbean identifying three previous fraudulent credit card charges made by him on a cruise he took in July 2019. In the e-mail, Royal Caribbean requested payment/reimbursement for approximately $10,000 in fraudulent charges.

3

4

Furthermore, cruise line personnel informed CBP that **Vernon** and **Point-Du-Jour** used credit cards to purchase approximately $115,000 in jewelry onboard the vessel during this voyage. Based on this information, CBP contacted the USSS. At approximately 11:15 a.m., USSS arrived to the terminal to interview **Vernon** and **Point-Du-Jour** and further assist in the investigation.

9. A search of **Point-Du-Jour's** cellphones also revealed names, dates of births, social security numbers, credit/debit card numbers, and other PII to unrelated individuals. Specifically, law enforcement observed at least 25 bank account numbers and social security numbers belonging to unrelated individuals on **Point-Du-Jour's** cell phone. Law enforcement stated that they observed a large amount of PII on **Point-Du-Jour's** iPhone that they were unable to capture with a photograph, but was in addition to what they were able to provide to the USSS.

10. Based on the above facts, your affiant submits that probable cause exists that suspect **Daniel George Vernon** and **Todd Jean Point-Du-Jour** did knowingly, and with intent to defraud, possess fifteen (15) or more counterfeit or unauthorized access devices, that is, credit card/debit card account numbers and social security numbers issued to other persons, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(3); and during and in relation to this felony violation, knowingly possessing and using, without lawful authority, a means of identification of another person, that is, credit card/debit card account numbers and social security numbers, in violation of 18 U.S.C. §§ 1028A and 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
James Cutbirth
SPECIAL AGENT
U.S. SECRET SERVICE

Sworn to and subscribed before me
This 12 day of August 2019.

_____
HONORABLE LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA.